IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORTON GROVE POST #134 OF THE AMERICAN LEGION, an Illinois Not-for-Profit Corporation,<br><br>                Plaintiff,<br><br>                v.<br><br>VILLAGE OF MORTON GROVE, ILLINOIS, a home rule Municipal Corporation,<br><br>                Defendant. | <br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED<br> |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

**COMES NOW** before this Honorable Court the Plaintiff, **MORTON GROVE POST #134 OF THE AMERICAN LEGION**, by and through KNABE & BEDELL, and LAW FIRM OF DAVID G. SIGALE, P.C., its attorneys, and complains of the Defendant, VILLAGE OF MORTON GROVE, ILLINOIS, a home rule Municipal Corporation, as follows:

**THE PARTIES**

1.    The Morton Grove Post #134 of the American Legion ("Post 134") is an Illinois Not-for-Profit corporation located in the Village of Morton Grove, Illinois.

2.    The Village of Morton Grove, Illinois is a body politic organized as a municipal corporation under the laws of the State of Illinois ("the Village"). Pursuant to Article 7 of the 1970 Constitution of the State of Illinois, the Village is a "home rule" municipality.

**JURISDICTION AND VENUE**

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983. This Court also has supplemental jurisdiction over claims alleged under state law pursuant to 28 U.S.C.§1367 as the state law claims are so

related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

4. Venue lies in this Court pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to this action are harming Plaintiffs in this District.

**STATEMENT OF FACTS**

5. Post 134 was organized in 1946 and has continuously served veterans, and the community, since it was established. There are currently over 1,000 members of Post 134, both men and woman, who served in the various branches of the United States Military and who have served in conflicts dating back to World War II.

6. As an organization, and as described on its website www.legion.org/mission;

> The American Legion was chartered and incorporated by Congress in 1919 as a patriotic veterans organization devoted to mutual helpfulness. It is the nation's largest wartime veterans service organization, committed to mentoring youth and sponsorship of wholesome programs in our communities, advocating patriotism and honor, promoting strong national security, and continued devotion to our fellow service members and veterans.

7. Since its inception, Post 134 has fulfilled this mission in the Village of Morton Grove through numerous events and community projects, such as participating in Memorial Day and Veterans Day parades, providing a Color Guard for the 4th of July Parades, performing regular visits to both Jesse Brown and Hines VA hospitals, assisting veterans in need, presenting the Gift to The Yanks Holiday program for veterans in nursing homes and VA hospitals, and providing various programs for the youth of Morton Grove, Illinois.

8. In September, 1949, Post 134 constructed a Post building at 6140 Dempster Street, Morton Grove, Illinois (hereinafter the "Building"). The Building served as a memorial to those who have served the United States in the armed forces, as well as a place to provide services to residents of the Village with functions such as the Fourth of July celebrations, Memorial Day celebrations, a gun range, and other functions and services available to the general public.

9. In or around the year 2000, Post 134 determined that it would be in the best interest of the Post, as well as the Village residents who the Building served, if the Village purchased the Building. After negotiating terms that would serve the long-term interest of Post 134 as well as provide the Village with a facility adequate to its needs, Post 134 and the Village entered into an "Agreement" on February 22, 2000. A copy of the Agreement is attached hereto as Exhibit 1 and by this reference it is incorporated herein.

10. Pursuant to the Agreement, Post 134 conveyed title to the Building to the Village but reserved for Post 134 "so as to continue to provide certain functions and services" . . . "the license to conduct certain of its functions and to grant exclusive use of the premises on a permanent basis, subject only to the restrictions, reservations, and conditions contained in [the] Agreement." Agreement, p.1-2.

11. The basement of the Building included a six-lane gun range (the "Range") that provided members of Post 134's gun club a proper facility in which they could practice and maintain the skills they mastered in the military; members have included veterans who hold the Distinguished Pistol Badge, are members of the coveted and prestigious" President's 100," are State Champions, or hold other important awards. The Range further provided to gun club

3

members the opportunity to train for competitions as well as enjoy the camaraderie shooting sports provide. In addition, under the guidance of the best trained and safest marksmen in the world – United States Servicemen - the Range also served the surrounding youth community by providing a facility at which Boy Scouts could earn their Rifle Merit Badge; and, under the tutelage of Post 134 members, the Range was used to train girls and boys ages 12-20 for a winter shooting league for junior shooters.

12. When the Post 134 sold the Building to the Village, it was a material term of the Agreement that Post 134 have the right to continue operation of the Range. In describing areas of use (either "exclusive" or "non-exclusive") that Post 134 retained, the Agreement specifically provided, in paragraph 4(b):

> The entire lower level basement, which includes the gun range and related storage and work rooms for the Legion's exclusive use. …The hours of operation of the gun range will be controlled by the Legion. The Village will continue to license the gun club so long as the Legion continues to operate the gun club and provided that the Legion operate and maintain the gun range in compliance with all applicable local, state and federal rules, regulations and laws.

13. In or around April, 2012, an inspector from the Intergovernmental Risk Management Agency ("IRMA"), the Village's insurer, inspected the Range and concluded that the ventilation system was not adequate or in compliance with industry standards. The inspector ordered the Range closed, at which point the Village padlocked the door to the range and posted a sign that prohibited anyone from entering the Range room without approval of the Village Chief of Police.

14. Members of Post 134 subsequently met with representatives of the Village in an effort to identify what works and upgrades would be necessary to re-open the Range. Meetings

between Post 134 and Village officials continued over the following months and then years. During the entire time that followed, the Village was aware of Post 134's desire to perform the necessary upgrades, as well as Post 134's efforts to bring the Range into compliance with appropriate standards, and the Village stated on more than one occasion that it "DOES NOT oppose the operation of the [R]ange" (emphasis in original) and that it "continues to look forward to working with [Post 134] in order to reach the mutual attainment of our collective goals for facility functionality and public safety." Letter, dated June 1, 2012, to Post 134 from Village Administrator Ryan J. Horne; Letter, dated November 14, 2012, to Post 134 from Village Fire Chief Thomas Friel.

15. A number of Post 134 members, some of whom had experience in construction and the heating, ventilation and air conditioning ("HVAC") fields, attempted to upgrade the Range's ventilation system so as to satisfy the concerns of the Village and IRMA. The Village, however, required the volunteers to stop as Post 134 had not obtained proper permitting for work. In response, Post 134 submitted a proposal to the Village in March, 2013. Once again, the Village and Post 134 met and discussed the proposed and required work. Ultimately, the Village found the proposal insufficient.

16. Under the coordination of a licensed architect that Post 134 retained and paid, on or about January 19, 2016, Post 134 submitted an application for a building permit that included the architect's drawings and HVAC proposals from an HVAC contractor.

17. By letter dated May 5, 2016, to Post 134 from Village Fire Chief Thomas Friel, the Village declined to issue a building permit, relying on reports from several consultants, including one in the field of shooting range construction. The Village concluded its letter,

5

stating: "Once you and your architect, and other project associates have reviewed these documents, I would welcome the opportunity to meet with your team along with representatives from Village staff and Patriot Range Technologies to discuss how this project can be advanced."

18. Post 134 made what it believed were the required changes and corrections to its plans and resubmitted them to the Village on March, 2018. The Village made issued additional criticisms of Post 134 new submission on September 4, 2018.

19. Post 134 then assembled a professional team that included, in addition to the previously retained architect, a mechanical engineer, and an expert in the construction of shooting ranges, to assist it in preparing a comprehensive plan to support an application for a building permit.

20. Post 134's consultants reviewed the prior reports and comments of the Village's experts in their respective fields. Working together, Post 134's consultants prepared another application for a permit to perform work that would bring the Range within industry standard and in conformity with applicable building and safety codes. Post 134's licensed architect submitted the application, with detailed drawings, HVAC specifications, and range safety modifications, to the Village on November 25, 2019.

21. Hearing no response from the Village by the end of January, 2020, on February 5, 2020, the architect contacted the Village Building Department to inquire about the status of permit review. At that time, the Village advised the architect that the permit under which the application was submitted had expired. The very next day, however, the architect received an e-mail indicating the Village was conducting an internal review of Post 134's application and

technical submissions but requested a digital copy of the plans and application. The architect complied with this request straight-away, sending .pdf versions on February 13, 2020.

22. In the ensuing months, Post 134 heard little from the Village, except e-mails from the Village's Permit Administrator, who said Post 134's application and supporting documents were being reviewed, but that the Village had to coordinate with their outside consultants and the like.

23. Then, on or about August 3, 2020, Post 134 received a letter from the Village denying its application. The Village first indicated that, because the Range had not been used for six consecutive months, its use was now a "non-conforming" use under the Village's zoning ordinance, requiring Post 134 to obtain a special use permit. The Village further indicated that it and its consultants found Post 134's plan "does not comply with applicable code requirements and industry standards." In addition, for the first time in this entire process, the Village made a demand for the cost of permit review not only going forward (this request made despite the earlier statement on non-conforming use) but for reimbursement of consultant fees the Village previously paid.

24. The bases upon which the Village concluded that Post 134's plan "does not comply with applicable code requirements and industry standards" were not justified by law or industry standard but were unreasonably imposed.

### COUNT I: VIOLATION OF RIGHT TO KEEP AND BEAR ARMS
### U.S. CONST. AMENDS. II AND XIV, 42 U.S.C. § 1983

25. Paragraphs 1 through 24 are incorporated as though fully stated herein.

26. The Second Amendment, which applies against the Village by operation of the Fourteenth Amendment, secures the right to operate firearms at a range, for purposes of learning about firearms, gaining proficiency with firearms, obtaining any training required as a condition of firearms ownership, recreation, and competition; and the right to own and operate a range for these purposes.

27. After shuttering the Range in 2011 based on alleged ventilation issues, the Village has at every turn met Post 134's effort to come into compliance with new and unreasonable or unnecessary requirements; with each of Post 134's submissions, the Village added a new "consultant" and a new layer of demands. Moreover, the demands were not reasonably supportable under industry guidelines or municipal code requirements.

28. The Village was also aware that, since the Village forced Post 134 to stop using the Range for its intended purpose, Post 134 *never* abandoned the Range but was continuously working to bring the Range into compliance with industry standards; any time Post 134 stopped work it was at the Village's insistence. Because Post 134 never abandoned the Range, but was in the process of renovation and improvement, the Village's assertion that the Range is a non-conforming use is both incorrect and an additional improper hurdle that has erected against Post 134 and its Range.

29. The Village's pattern and practice of intentionally and wrongfully preventing Post 134's ability to re-open the Range unduly burdens the Second Amendment right to operate the Range and its members' ability to exercise their Second Amendment right to use the Range. Under color of law, the Village thus deprives Post 134 and its members of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Post 134 is thus damaged in violation of 42 U.S.C. § 1983 and are therefore entitled

to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Village's unconstitutional customs, policies, and practices.

## COUNT II: VIOLATION OF FREE SPEECH
## U.S. CONST. AMENDS. I AND XIV, 42 U.S.C. § 1983

30. Paragraphs 1 through 29 are incorporated as though fully stated herein.

31. The First Amendment, which applies against the Village by operation of the Fourteenth Amendment, secures the right to provide and receive education and instruction in the use of firearms, including the right to provide and receive the training required by defendant as a prerequisite to owning firearms.

32. By so burdening the owning and operation of the Range, the Village, currently under color of law, deprives Post 134 and its members of their right to free speech, in violation of the First and Fourteenth Amendments to the United States Constitution. Post 134 is thus damaged in violation of 42 U.S.C. § 1983 and are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of the Village's unconstitutional customs, policies, and practices.

## COUNT III: VIOLATION OF ILLINOIS STATE LAW
## BREACH OF LEASE AGREEMENT

33. Paragraphs 1 through 32 are incorporated as though fully stated herein.

34. The Agreement created enforceable contractual obligations between the Village and Post 134, one of which was Post 134's right to operate the Range.

35. By unreasonably, and without justification by law or industry standard, preventing Post 134 from enjoying the benefit of the Agreement, the Village is in breach of the Agreement.

36. Post 134 has made repeated demands of the Village to cease and cure its breach, but the Village has so far refused.

37. Post 134 has been damaged by the Village's breach of the Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, MORTON GROVE POST #134 OF THE AMERICAN LEGION, respectfully requests this Honorable Court enter judgment in its favor and against the Defendant, VILLAGE OF MORTON GROVE, ILLINOIS, a home rule Municipal Corporation, and to grant Plaintiff the following relief:

1. Enter an order preliminarily and permanently enjoining the Village, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from preventing Post 134 from completing the renovation and improvement of the Range as proposed in the application for building permit, with its accompanying plans, submitted to the Village on February 13, 2020, including the mandatory relief requiring the Village to issue the necessary and appropriate permits for these renovations and improvement;

2. Enter an order preliminarily and permanently enjoining the Village, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from preventing Post 134 and its members from operating and using the Range, including mandatory relief that the Village issue the necessary permits and licenses necessary to the operation of the Range;

3. Grant Plaintiff any and all further declaratory relief consistent with the injunction;

4. Award Plaintiff money damages, in an amount to be proven at trial, for the Village's breach of the Agreement;

5. Award Plaintiff attorney fees and costs, pursuant to 42 U.S.C. § 1988;

6. Award Plaintiff costs of suit; and

7. Grant Plaintiff such other and further relief as this Honorable Court deems just and appropriate.

**POST 134 DEMANDS TRIAL BY JURY.**

Dated: February 18, 2021

**MORTON GROVE POST #134 OF
THE AMERICAN LEGION**

By:   /s/ Gregory A. Bedell
    One of its Attorneys

Gregory A. Bedell, (#6189762)　　　　David G. Sigale (Atty. ID# 6238103)
KNABE & BEDELL　　　　　　　　　　LAW FIRM OF DAVID G. SIGALE, P.C.
33 North Dearborn Street　　　　　　　430 West Roosevelt Road
10th Floor　　　　　　　　　　　　　　Wheaton, IL 60137
Chicago, IL 60602　　　　　　　　　　630.452.4547
312.977.9119　　　　　　　　　　　　dsigale@sigalelaw.com
gbedell@kkbchicago.com

Attorneys for Plaintiffs